**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CT INSTALL AMERICA, LLC, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|   v. | : | No.: 22-cv-4557 |
| | : | |
| JULIAN BORYSZEWSKI, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM**

SITARSKI, M.J.                                                     June 27, 2023

Pending before the Court is Defendant Brian Sutherland's Motion for Rule 11 Sanctions (ECF No. 59), Plaintiff's Response (ECF No. 72) and Memorandum of Law in Opposition thereto (ECF No. 73), and Defendant Brian Sutherland's Reply (ECF No. 74).  For the following reasons, the motion will be **DENIED WITHOUT PREJUDICE**.

I.        **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff CT Install America, LLC (CT) sued Sutherland, several other former employees, and their alleged new employer, Focal Point Remodeling (FPR), alleging that beginning in the fall of 2020 and continuing well into 2021, both during and after their employment with CT, the individual Defendants misappropriated its trade secrets and other confidential proprietary information to launch and/or work for FPR, a direct competitor, notwithstanding non-competition, non-solicitation, and non-disclosure provisions in their respective employment agreements.  (*See generally* Compl., ECF No. 29).[2]  Sutherland was CT's Head of Digital and

---

[1]  For additional facts, see the Court's May 8, 2023 Memorandum denying Plaintiff's Motion for Preliminary Injunction.  (Memo., ECF No. 69).

[2]  The complaint was originally filed under seal on November 10, 2022, but on December 22, 2022, Plaintiff refiled it unsealed and redacted.  The Court cites to the unsealed document

Social Systems and, in this role, allegedly received specialized training in CT's digital marketing and advertising strategies and customer lead generation software. (Compl., ECF No. 29, at ¶ 153). Sutherland terminated his employment with CT on March 19, 2021. (*Id.* at ¶ 158, 211). CT alleges that Sutherland is now employed by and assisting FPR in its direct competition with CT, solicitation of CT's employees, suppliers, and customers, and use of CT's confidential information and trade secrets. (*Id.* at ¶ 158).

Between November 23 and December 11, 2022, Sutherland's counsel sent CT's counsel three emails stating that Sutherland has never been employed by FPR and denying that he has ever violated his employment agreement. (Mot. for Sanctions, Exs. 2 & 4, ECF Nos. 59-2 & 59-4). On December 22, 2022, pursuant to Rule 11's safe harbor provision,[3] Defendant sent a copy of the instant motion and attached exhibits to Plaintiff's counsel. (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 4). On December 29, 2022, Sutherland served upon CT discovery requests seeking information about the bases for its assertions that he was employed by FPR and that he took the actions alleged in the complaint. (*Id.*, Ex. B, ECF No. 59-9). The 21-day safe harbor period expired on January 12, 2023, without the voluntary dismissal of Sutherland as a defendant. On February 23, 2023, CT served Sutherland with responses to his discovery requests, but they did not resolve the parties' dispute as to whether he is a proper defendant in this matter. (*Id.*, Ex. D, ECF No. 59-11).

---

throughout this Memorandum. (Compl., ECF No. 29).

[3] Rule 11 provides: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. . . ." Fed. R. Civ. P. 11(c)(2). This provides for a 21-day day grace period so a party has an opportunity to correct errors. *See Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 401 (E.D. Pa. 2014).

Sutherland filed the instant motion against CT and its counsel, Andrew W. Muir, Esquire, on March 16, 2023.  (Mot. for Sanctions, ECF No. 59).  CT filed its response on May 11, 2023, and Sutherland filed its reply on May 17, 2023.[4]  (Resp., ECF No. 73; Reply, ECF No. 74).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 11 provides in pertinent part:

> (b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  "If warranted, the court may award to the prevailing party the reasonable expenses, including fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2).

In deciding whether to impose Rule 11 sanctions, a court must assess whether the conduct was reasonable under the circumstances.  *Bus. Guides, Inc. v. Chromatic Commc'ns Ents., Inc.*, 498 U.S. 533, 551 (1991); *see also Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010), *as amended* (Dec. 7, 2010).  The Third Circuit defines reasonableness as "'objective knowledge or belief at the time of the filing of the challenged paper' that the claim was well-grounded in law and fact."  *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh*

---

[4]  In his reply, Sutherland notes that the response was submitted only on behalf of "Plaintiff," not its attorney, although Sutherland nonetheless construes it as submitted by both. (Reply, ECF No. 74, at 1 n.1).  Finding the arguments made in the response equally applicable to CT and its counsel, the Court also considers the filing as Attorney Muir's response to the motion.

*Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990)).  Sanctions should be imposed only "in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) ("Rule 11 sanctions may be awarded in exceptional circumstances in order to 'discourage plaintiffs from bringing baseless actions or making frivolous motions.'").  Moreover, Rule 11 sanctions are "normally . . . determined at the end of litigation . . . ."  *Asch Webhosting, Inc. v. Adelphia Bus. Sols. Inv., LLC*, No. 04-2593, 2006 WL 1098235, at *16 (D.N.J. Mar. 31, 2006) (quoting *Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998)).

## III.      DISCUSSION

### A.      The Parties' Positions

Sutherland argues that CT and Muir failed to conduct any pre-complaint investigation, let alone the "reasonable investigation" required by the rule.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 11)  He claims that CT's discovery responses make clear that it lacked a basis to set forth the primary averments in the complaint (i.e., that Sutherland was employed by FPR and that he accessed CT's computer system without authorization to aid FPR) and that, on the contrary, CT's owner (Chris Slocomb) and president (Thomas McMillan) knew that since leaving CT Sutherland was employed in the health and fitness industry and only accessed CT's computer systems when requested by its employees to provide technical assistance.  (*Id.* at 12)  He observes that the spreadsheet attached to the complaint shows no system access by Sutherland and that the revised spreadsheet produced in discovery shows only a single login, after McMillan allegedly texted him for technical assistance.  (*Id.* at 13 & n.8)  He

4

points out that there were no time constraints impeding the ability to investigate before filing the complaint, as evidenced by Plaintiff's filing (and subsequent withdrawal) of a similar state court complaint over a year ago. (*Id.* at 13-14) Further, he contends that CT and Muir have also failed to fulfill their continuing duty to investigate after filing the complaint, particularly by ignoring discovery showing that the allegations against him are meritless. (*Id.* at 14).

CT and Muir respond that it is objectively reasonable that Sutherland has been named as a defendant in this matter. (Resp., ECF No. 73, at 13) They note that he terminated his employment with CT contemporaneous with the departures of the former CT executives and employees who now serve as the principals of FPR and that he continued to sign into Plaintiff's lead generation computer system after he was employed with CT or had any legitimate reason to access it. (*Id.* at 13-14) They deny that CT's executives ever authorized Sutherland to access its systems after he terminated his employment and insist that, in any event, he cannot explain why he accessed CT's lead generation database in February 2022. (*Id.* at 15) Further, they characterize Sutherland as "the architect" of CT's two computer systems allegedly later replicated by FPR and maintain that no one without intimate knowledge of these programs and CT's business could have customized these data management products so quickly. (*Id.* at 14) CT and Muir deny that Sutherland's LinkedIn page stating that he works for a health and fitness company is conclusive as to whether he has ever worked for FPR. (*Id.* at 14-15) Additionally, they allege that Sutherland has refused to return a company cellphone containing passwords used to access CT's computer systems and that at least one co-defendant former CT employee, Matthew Cruz, asked Sutherland for assistance in wiping the information from his computer before he departed CT. (*Id.* at 14-16).

Plaintiff and Muir acknowledge that Sutherland's contentions may prove to constitute viable defenses later in the proceedings, but they maintain that the case against him is neither

frivolous nor an abuse of process, that they have no reason to unnecessarily name him as a defendant, and that no "exceptional circumstances" warranting sanctions exist.  (*Id.* at 15-16).  Instead, they submit that they have merely followed the evidence in this matter and that CT should be permitted to continue to attempt to gather evidence against Sutherland not currently in its possession, including by subpoenaing the two database manufacturers and reviewing the CT cellphone currently in Sutherland's possession when it is returned.  (*Id.*).  They further contend that they have demonstrated good faith by dismissing other defendants in this matter following attorney interviews with them and that, to this end, Muir has offered to speak with Sutherland on or off the record, but that his counsel has refused.  (*Id.* at 16).

In reply, Sutherland accuses CT and Muir of inverting Rule 11 to require them only to show they did not affirmatively know that the facts pled in the complaint were *not* accurate and maintains that, at best, they sued him without knowing whether he had ever been employed by FPR or was otherwise a proper defendant, despite their awareness of CT's claims since at least June 2021 and CT's principals' knowledge that he now works in the health and wellness industry.  (Reply, ECF No. 74, at 3-4).  He further argues that CT and Muir cannot avoid sanctions by relying on new facts not pled in the complaint.  (*Id.* at 5-6).  According to Sutherland, these new facts include, *inter alia*: (1) that even if Sutherland was not employed by FPR, he nonetheless opened himself to liability by "assisting" it; (2) that he developed and refined CT's information technology infrastructure, including its lead generation software programs, and was therefore the only person who could have recreated them for FPR in such a short time; (3) that Sutherland continued to log in to CT's databases until it disabled his credentials and that Sutherland cannot account for these logins; and (4) that he refused to return a company cellphone.  (*Id.* at 5-9).  He posits that, contrary to CT and Muir's arguments in their brief, his liability on any claim as alleged in the complaint depends on his having been employed

by FPR, not whether he assisted it, accessed CT's computer system after his resignation without authorization or refused to turn over a cellphone.  (*Id.* at 9-10).  Additionally, he observes that unlike the other defendants he is not specifically identified in the complaint or the logs attached thereto as having accessed CT's databases after he resigned and that the complaint alleges only that he (like the other individual defendants) was "trained" in CT's lead generation software, not that he created it.  (*Id.* at 10-11).

Finally, Sutherland denies that the facts proffered by CT and Muir are true.  He maintains that, by CT and Muir's own admission, the software programs that allegedly only Sutherland could recreate were in fact "widely available" and "canned," rendering their claim that only he could have engineered them for FPR nothing more than speculation.  (*Id.* at 12).  He also notes that CT and Muir have not provided a sworn declaration to support their contention that "former employees" are not permitted access to CT's computer systems or to refute Sutherland's sworn statement that such access was provided by him.  (*Id.* at 12-13).  Moreover, he contends that emails submitted with his briefing prove that he has not refused to return the cellphone or sit for his deposition.  (*Id.* at 13-15).  He dismisses as "irrelevant nonsense" CT and Muir's observation that Sutherland's LinkedIn profile shows he provided database management consulting services, as well as the fact that CT has dismissed other defendants in this matter.  (*Id.* at 14).

**B.    Analysis**

The opposing sides present starkly differing facts in this matter.  CT and Muir summarize their reasons for suing Sutherland as follows:

> Install America named Sutherland as a Defendant in this action
> because he logged into Plaintiff's databases after his employment
> ended. Moreover, Defendant's ability to implement technology
> infrastructure identical to Plaintiff's within weeks of opening is
> strong, circumstantial evidence that Defendants had help either
> from Sutherland, or someone with training and experience exactly
> like Sutherland. Sutherland left Plaintiff at the same time that

> Defendant FPR's executive team did. Finally, Sutherland left with
> Plaintiff's hardware and passwords in hand, in the form of the
> company phone that Sutherland has yet to return. Sutherland is an
> appropriate, named defendant in this matter.

(Resp., ECF No. 73, at 11).

On the other hand, Sutherland asserts, in effect, that no good deed goes unpunished.  He maintains that CT and Muir's primary reason for naming him, his post-employment login activity, is the result of his having voluntarily continued to provide technical assistance to CT's employees and officers at CT's "*direct request and with its authorization*" but without pay from CT.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 2 (emphasis in original)).  He paints a wholly different picture of CT's purportedly "highly customized programs" – as instead "not evenly conceivably proprietary" – and dismisses the timing of his departure amid his co-defendants' departures as merely coincidence.  (Resp., ECF No. 73, at 7; Reply, ECF No. 74, at 7).  He also dismisses the dispute over the cellphone as a red herring, an unrelated matter that is in any event the fault of CT.  (Reply, ECF No. 74, at 13-14).

Though the Court makes no qualitative assessment of the merits of CT's case against Sutherland, it is not persuaded that it is so frivolous as to warrant sanctions at this early juncture. *Cf. Gress v. PNC Bank*, No. 99-2028, 2001 WL 484171, slip op. at *2 (E.D. Pa. Mar. 31, 2001). CT and Muir have not engaged in the egregious behavior often exhibited when sanctions are imposed for the mere filing of a complaint.  *See, e.g.*, *Balthazar v. Atl. City Med. Ctr.*, 137 F. App'x 482, 490 (3d Cir. 2005) (sanctions warranted for filing proposed amended complaint when allegations were almost identical to claims previously rejected by state court and previously dismissed by the District Court); *Lai v. Wei*, No. 07-179, 2007 WL 1963331, at *5 (D.N.J. June 29, 2007) (plaintiff violated Rule 11 when she was on notice that claims were futile and nonetheless filed action); *Lal v. Borough of Kennett Square*, 935 F. Supp. 570, 576-77 (E.D.

Pa. 1996) (complaint and amended complaint violated Rule 11 when "obvious and well-settled" defenses clearly and definitively barred plaintiff's claims).

Here, according to Sutherland's own declaration, after he resigned from CT, he received more than 45 requests to provide technical assistance to his former coworkers, and each time he "responded with an effort to assist and resolved the problem to their satisfaction." (Sutherland Decl., ECF No. 59-1, at ¶¶ 20-23). It is not clear how many of these requests resulted in Sutherland logging into CT's system, and there appears to be some factual dispute about the number of allegedly unauthorized logins at issue, with CT and Muir referencing "a series of log-ins Sutherland made during February 2022" and Sutherland claiming that CT's logs show only a single login by him on February 23, 2022.[5] (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 8 n.5; Resp., ECF No. 73, at 10). According to Sutherland, he logged into CT's database after McMillan texted him for technical assistance that morning at 9:54 a.m., but the connection between the text and the login is not as clear as he suggests. (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 8). The text states only: "Brian, is there any way you can give me a call this morning? I would like to discuss a few things. Tom[.]"[6] (Text & Call Recs., ECF No. 59-1, Ex. G, at 107). But it does not definitively establish that the subsequent login by Sutherland was authorized by McMillan, such that the contention that the login was part of a larger conspiracy against CT is "patently unmeritorious or frivolous." *Doering*, 857 F.2d at 194. On its face, the text makes no mention of technical assistance. Moreover, in the course of Muir's

---

[5] The spreadsheet produced in discovery by CT shows four "Login" entries for "bsutherland," all between 10:23 a.m. and 10:24 a.m. on February 23, 2022. (Login Spreadsheet, ECF No. 60, at 2). It is unclear if these entries represent a single or multiple logins.

[6] Sutherland did not send McMillan a responsive text, presumably because the text requested a phone call instead.

investigation, "Plaintiff's executives flatly den[ied] that former employees have authorized access to the company's databases" and instead reported that "Plaintiff's policy is to terminate an employee's access to electronic tools at the end of their employment." (Resp., ECF No. 73, at 10). Although CT may ultimately fail to prove that the login activity reflected on the spreadsheet was unauthorized,[7] the Court cannot say at this early stage that CT and Muir acted unreasonably in naming Sutherland on the basis, in part, of this post-employment accessing of its computer database by him. *See Bus. Guides, Inc.*, 498 U.S. at 551 (court must assess whether the challenged conduct was unreasonable under the circumstances).

In addition to the allegedly unauthorized computer access, CT and Muir identify several pieces of circumstantial evidence purportedly pointing to Sutherland's role in the alleged conspiracy, including his departure simultaneous with that of FPR's new executive team, his unique knowhow to replicate CT's computer systems, the speed at which that occurred, and his refusal to return a company phone bearing passwords to CT's systems. (Resp., ECF No. 73, at 11). Sutherland responds that these facts are not pled in the complaint, but, again, a claimant need not plead all its evidence in its pleading. *See* MOORE'S FEDERAL PRACTICE § 8.04[5]. He

_____

[7] Sutherland notes that the complaint does not allege any purportedly unauthorized computer activity by him specifically (unlike many of the other defendants), that CT's executives' contention that ex-employees are not permitted system access does not refer to him by name, and that the contention is not supported by a declaration (unlike his sworn averment). (Reply, ECF No. 74, at 9-11). However, notice pleading requires only that the pleader provide a "plausible factual foundation for th[e] claim." *E.E.O.C. v. Ruby Tuesday, Inc.*, 919 F. Supp. 2d 587, 592 (W.D. Pa. 2013). It does not normally require a party "to plead its evidence in the complaint." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[5] (Matthew Bender 3d ed.) (citing cases from the First, Second, Fifth, Eighth and Eleventh Circuit Courts of Appeals). Moreover, Sutherland's issues with CT's unsworn contention that "former employees" (implicitly but not specifically including Sutherland) essentially asks this Court to wade into an evidentiary dispute more appropriate for later proceedings. At this nascent stage, however, the Court looks only at whether CT and Muir have offered a reasonable explanation for their actions, not whether CT has sufficient evidence to prove its claims. *See Ford Motor Co.*, 930 F.2d at 289.

continues that it is "ridiculous" for CT and Muir to suggest that FPR could not have developed its computer systems without his assistance, that even the notion that the systems were somehow proprietary is "mythical," and that emails attached to his brief show that "it is utterly untrue" and "provably false" that he refused to return the cellphone.  (Reply, ECF No. 74, at 10, 12-13). However, this Court should not and cannot attempt to resolve these disputes at this stage. Whether any technology or other information allegedly taken or recreated by the departing CT employees was proprietary remains a central dispute in the underlying litigation.  Moreover, the Court has reviewed the attached emails regarding the return of the cellphone, and they fail to establish, at this early point, that Sutherland did not "refuse" to return it, such that CT and Muir could not have considered that purported fact in their decision to sue Sutherland.  (*See* Emails to/from Counsel, ECF Nos. 74-1 to 74-3).  On the contrary, they show a back-and-forth between the attorneys regarding parameters for the return of the phone, with no agreement reached.  (*Id.*).

Sutherland also complains that CT and Muir alleged in the complaint that he works for FPR when, in fact, they knew or should have known that since departing CT he has worked in the health and wellness industry, as evidenced by an August 6, 2022 voicemail from Slocomb. (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 12).  The transcribed voicemail from Slocomb states in relevant part: "I just listen[ed] to this really cool podcast and I thought of you and what you're doing now if [with?] you[r] heart rate performance athletes and all that and wanted to tell you about it[.] [T]hought it might be a good thing for you to pursue . . . ." (Slocomb VM, ECF No. 59-1, Ex. A, at 11).  However, like Sutherland's other cited evidence, this voicemail does not objectively establish at this juncture that the allegations against him are patently frivolous.  Even if Slocomb knew that in August 2022 Sutherland was doing something with "heart rate performance athletes" or, indeed, that he is employed by a company in the health and wellness industry, as Sutherland's LinkedIn page indicates, CT and Muir counter that the

page further states that Sutherland has continued to operate a consulting firm with expertise in

"database management" starting during his employment with CT and continuing with his present

employer.  (Memo. in Supp. of Mot. for Sanctions, ECF No. 59-7, at 12).  As CT and Muir note,

CT's claims against Sutherland do not ultimately depend upon his being employed or having

been employed with FPR.  Sutherland disputes this (*see* Reply, ECF No. 74, at 9), but his

litigation opponents are correct.  Even if Sutherland has never been employed by FPR, rendering

paragraph 158 of the complaint incorrect and paragraphs 24 and 64 of the complaint incorrect as

they relate to Sutherland, (*see* Compl., ECF No. 29, at ¶¶ 24, 64, 158 (alleging Sutherland and

"Defendants" employment by FPR)), he could nonetheless be liable to CT if, as alleged in the

complaint, he conspired with the co-defendants to misappropriate its trade secrets and

confidential and proprietary information and provide services to a competing business in

contravention of his employment agreement with CT.[8]  In reaching this conclusion, the Court is

mindful that Rule 11 requires that "*factual contentions* have evidentiary support," F.R.C.P.

11(b)(3), and that here such support for the averment that Sutherland is employed by FPR seems

to be limited, at this point, to the circumstantial evidence that he left CT at the same time as the

other employees who founded and/or work for FPR and that he allegedly acted on its behalf by

setting up the competitor's computer systems.  Nonetheless, even assuming that CT and Muir

lacked an adequate evidentiary basis to assert that Sutherland is employed by FPR, as opposed to

his having some other type of business relationship with it, this misstatement of a fact that

ultimately has little to no bearing on CT's claims against Sutherland does not rise to the level of

a sanctionable Rule 11 violation.  *See Balthazar*, 137 F. App'x at 490 (sanctions warranted

---

[8] Sutherland identifies no claim against him for which an element is his *employment* by a competing business of CT.

where allegations of complaint had been rejected twice before); *Lai*, 2007 WL 1963331, at *5 (sanctions warranted for knowingly filing futile claims); *Lal*, 935 F. Supp. at 576-77 (same).

In sum, in light of the early stage of the proceedings and the ongoing factual disputes regarding what evidence exists for the allegations regarding Sutherland in the complaint, this Court denies the motion, albeit without prejudice to him refiling it as warranted at the conclusion of this case.[9]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Rule 11 Sanctions will be DENIED WITHOUT PREJUDICE.  Plaintiff's request for fees and expenses is DENIED WITHOUT PREJUDICE.

An appropriate Order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[9] Although the Court is constrained to deny Sutherland's motion at this juncture, it stresses that it will entertain a renewed motion at the conclusion of the case against him if he and his counsel determine that they have a factual and legal basis to refile at that time.  Specifically, sanctions may be justified if, *inter alia*, during the pre-complaint investigation CT's executives engaged in misrepresentations, omissions or prevarications regarding Sutherland's authorization to access CT's databases after his resignation.

13