**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CT INSTALL AMERICA, LLC,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 22-cv-4557** |
| | : | |
| **JULIAN BORYSZEWSKI, et al.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                 **July 8, 2026**

Presently pending before the Court is Plaintiff's Motion for Sanctions Regarding

Defendants'[1] Production and Responses to Interrogatories (ECF No. 178), Defendants' response

in opposition thereto (ECF No. 180), and Plaintiff's reply in further support (ECF No. 181).  For

the reasons that follow, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff first served Defendants with discovery requests in December 2022.  (Memo. in

Supp. of Pl.'s First Mot. to Compel, ECF No. 61-2, at 6).  Plaintiff was dissatisfied with the

responses and moved to compel the discovery in March 2023, but after an opposition from

Defendants this Court denied the motion without prejudice because the underlying requests were

premature in light of the denial of Plaintiff's motion for a preliminary injunction.  (Pl.'s First

---

[1]  For purposes of this Memorandum, "Defendants" shall refer to Julian Boryszewski, Focal Point Remodeling, Inc. (FPR), Jessica Boryszewski, Nicholas Canci, Matthew Boryszewski, Matthew Cruz, Ginger Stanley, Alexx Biscuit, Timothy Bodnar, Carrie Sullivan, and Matthew Blumberg.

[2]  Because the Court writes primarily for the benefit of the parties, the Court recites only those facts pertinent to the resolution of the instant motion.

Mot. to Compel, ECF No. 61; Defs.' Resp. to Pl.'s First Mot. to Compel, ECF No. 66; Order, ECF No. 71).

Plaintiff re-served requests in May 2024. (Memo. in Supp. of Pl.'s Sec. Mot. to Compel, ECF No. 107-1). It was again dissatisfied with Defendants' responses and filed another motion to compel. (Pl.'s Sec. Mot. to Compel, ECF No. 107). Following additional briefing from the parties, the Court granted the motion on October 1, 2024, and ordered Plaintiff "to produce all discovery" requested therein within 14 days. (Defs.' Resp. to Pl.'s Sec. Mot. to Compel, ECF No. 108; Reply in Supp. of Pl.'s Sec. Mot. to Compel, Order, ECF No. 115, at 1-2).

Defendants subsequently provided Plaintiff with a few thousand pages of documents but withheld the remainder of the requested production and objected to most of Plaintiff's interrogatories. (Pl.'s Third Mot. to Compel, ECF No. 131, at 2). Plaintiff then filed its third motion to compel. (*Id.*). Following a response from Defendants, the Court granted in part and denied in part the motion on January 22, 2025, and again directed them to "produce all discovery ordered produced" in the prior order. (Defs.' Resp. to Pl.'s Third Mot. to Compel, ECF No. 132; Order, ECF No. 137).

On February 27, 2025, Plaintiff filed is fourth motion to compel, alleging that Defendants' document production and written responses remained inadequate. (Pl.'s Fourth Mot. to Compel, ECF No. 142). Defendants moved to strike the motion for failure to include the required certification of good faith efforts to resolve the matter. (Defs.' Resp. to Pl.'s Fourth Mot. to Compel, ECF No. 143). On March 3, 2025, the Court granted Defendants' motion, struck Plaintiff's motion to compel without prejudice and ordered the parties to submit a joint status report following a meet-and-confer regarding the myriad discovery disputes set forth in Plaintiff's motion. (Order, ECF No. 144). On March 17, 2025, the parties submitted their report

2

indicating that Defendants would submit amended discovery responses within six days, with Plaintiff reserving its right to file additional discovery motions as it believed warranted. (Jt. Status Rpt., ECF No. 145).

On October 15, 2025, Defendants filed a motion for a protective order prohibiting Plaintiff from seeking any more of its electronically stored information (ESI). (Defs.' Mot. for Pro. Order, ECF No. 161). Eight days later, Plaintiff responded and cross-moved for leave to seek sanctions regarding Defendants' discovery noncompliance. (Pl.'s Resp. to Defs.' Mot. for Pro. Order, ECF No. 162; Pl.'s Mot. for Leave to Seek Sanctions, ECF No. 163). Following the conclusion of briefing, this Court denied both motions. (Order, ECF No. 164). In denying the latter without prejudice, the Court noted that Defendants' offer to jointly engage a third-party vendor to facilitate the transfer of ESI (although rejected by Plaintiff) had seemingly been made in good faith but disapproved of their unilateral imposition of search terms and again ordered it to produce or make available "all" requested discovery. (*Id.* at 2). It further reminded Defendants that "a party who responds to an interrogatory by referencing its document production must sufficiently specify where in the production the responsive documents can be found." (*Id.* (case citation omitted)). Given the lack of any indication of recent attempts by the parties to resolve these disputes, the Court directed them to further meet and confer and then file another status report, which they did on December 29, 2025. (*Id.*; Jt. Status Rpt., ECF No. 170).

On January 28, 2026, after Plaintiff filed for limited consideration as to the Court's earlier order denying Defendants' motion for a protective order but not awarding Plaintiff its expenses incurred in opposing the motion, the Court awarded Plaintiff reasonable expenses, with the amount to be determined following additional submissions from the parties. (Order, ECF No. 173).

On March 17, 2026, Plaintiff filed the instant motion for sanctions.  (Mot. for Sanctions, ECF No. 178).  On April 2, 2026, Defendants filed a response, (Resp., ECF No. 180), and on April 20, 2026, Plaintiff filed a reply.  (Reply, ECF No. 181).

## II.    LEGAL STANDARD

### A.    F.R.C.P. 26(g)(3)

Rule 26(g)(3) mandates that the Court "must impose an appropriate sanction" on one who signs, and thereby confirms the correctness of, a discovery response without first conducting "a reasonable inquiry . . . ."  F.R.C.P. 26(g)(3).  The applicable standard asks whether the response was "objectively unreasonable under the circumstances" at the time it was made.  *Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 84 (E.D. Pa. 1992).  Rule 26(g)(3) further provides that as a sanction the court may award reasonable expenses and attorney's fees "caused by the violation."  FED. R. CIV. P. 26(g)(3).  "Accordingly, some courts have interpreted Rule 26(g)(3) as incorporating a requirement that there be harm resulting from the alleged violation of the Rule."  *See, e.g., Bracey v. Harlow*, No. 1:11–cv–4–SJM–MPK, 2013 WL 2253576, at *3 (W.D. Pa. May 22, 2013) (citing *Singer v. Covista, Inc.*, Civil Action No. 10–6147(JLL), 2013 WL 1314593 at *9 (D.N.J. Mar. 28, 2013); *Winner v. Etkin & Co., Inc.*, No. 2:07–cv–903, 2008 WL 5429623 at *5 (W.D. Pa. Dec.31, 2008)).

### B.    F.R.C.P. 37(b)(2)

When a party from whom discovery is sought fails to comply with a court order compelling discovery, Rule 37 of the Federal Rules of Civil Procedure allows for the imposition of sanctions.  The Rule provides:

4

> If a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders.  They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> (iv) staying further proceedings until the order is obeyed;
>>
>> (v) dismissing the action or proceeding in whole or in part;
>>
>> (vi) rendering a default judgment against the disobedient party; or
>>
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A).

"Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  FED. R. CIV. P. 37(b)(2)(C).

"The purpose of Rule 37 sanctions is to: (1) ensure that a party will not benefit from its own failure to comply, (2) serve as a specific deterrent . . . , and obtain compliance with a particular Order issued, and (3) serve as a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *Update Art, Inc. v. Modin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  A court has broad authority to issue sanctions for failure to comply with discovery orders.  However, the broad discretion to impose sanctions pursuant to Rule 37 is limited by the requirements that the

sanctions be "just" and that they be "specifically related the particular claim which was at issue in the Order to provide discovery." *Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) (further quotations omitted).  In general, "courts should strive to select sanctions that are responsive to the nature of the violation, to the relative culpability of the mental state that accompanied the violation, and to the kind of harms the violation caused or threatens."  7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.41 (Matthew Bender 3d ed.).

## III.    DISCUSSION

### A.    Identification of Responsive Documents

Initially, Plaintiff challenges Defendants' answers to Interrogatories Numbers 5 through 7, 10 through 12, 14, 16 and 17[3] insofar as they state that "[d]ocuments responsive to this interrogatory have be[en] provided to Plaintiff through Defendants' Document Production" without identifying those documents.  (Mot. for Sanctions, ECF No. 178, at 3-7 (quoting Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at Nos. 5-7, 10-12, 14, 16-17)).  Defendants respond that their provision of "complete access to all documents in their possession," as well as associated hard drives, cell phone backups and metadata, fulfills their duties under Rule 33, which permits a party served with interrogatories to supply business records in lieu of substantive answers.  (Resp., ECF No. 180, at 8).  They claim that it will be "simple" for Plaintiff to search these records and note that they have repeatedly amended and

---

[3] Collectively, these interrogatories seek information about, *inter alia*, Defendants' electronic devices and Defendant FPR's customers, employees, contractors, lead aggregators, vendors, suppliers, revenues, participation in trade shows and customer presentations.  (Mot. for Sanctions, ECF No. 178, at 4-5 (citing Pl.'s First Set of Interrogatories, ECF No. 178-2, at Nos. 5-7, 10-12, 14, 16-17)).

supplemented their discovery responses in good faith when warranted.  (*Id.* at 8-9).  In reply, Plaintiff cites cases indicating that an interrogatory response directing the issuing party to the respondent's document production must sufficiently specify the responsive documents for them to be located.  (Reply, ECF No. 181, at 18 (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 301 (3d Cir. 1983); *Haughton v. Dist. of Columbia*, 315 F.R.D. 424, 427-28 (D.D.C. 2014))).

Rule 33(d) allows a party responding to an interrogatory the "option to produce business records" instead of providing the information requested if two conditions are met: (1) the information is available from the records; and (2) the burden of ascertaining that information is "substantially the same for either party . . . ."  F.R.C.P. 33(d).  However, even in such cases, the respondent must: (1) "specify[ ] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily" as it could; and (2) give the party propounding the interrogatory "a reasonable opportunity" to review and inspect the records.  F.R.C.P. 33(d)(1)-(2).

Here, Plaintiff does not dispute that the information requested is available in the records provided.  However, Defendants, who are presumably best situated to evaluate whether the burden of uncovering it is the same for both sides, make no such assertion.  At most, they assert that it would be "simple" for Plaintiff to search the voluminous electronic discovery produced to find the information for itself.  (Resp., ECF No. 180, at 8); *see Kalp v. Life Ins. Co. of N. Am.*, No. 08-1005, 2009 WL 261189, at *9 (W.D. Pa. Feb. 4, 2009) ("Defendant's response, in which it refers to Rule 33(d) but makes no attempt to establish that its 'burden of deriving or ascertaining the answer is substantially the same' for it as for Plaintiff, is inadequate under Rule 33.") (citation omitted).  But even construing this assertion as a claim that they would have to

undertake the same efforts as Plaintiff to unearth the information at issue in the interrogatories, their answers thereto are inadequate under Rule 33(d)(1).

Defendants fail to "specify" which records Plaintiff must review to glean the information it seeks, let alone do so in enough detail to permit Plaintiff to "readily" carry out this task. *See* F.R.C.P. 33(d)(1). Instead, they merely point Plaintiff to their sizeable production as a whole. (Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at Nos. 5-7, 10-12, 14, 16-17). Such an approach has been repeatedly held noncompliant with the obligations imposed by Rule 33(d). *See Nobles v. Jacobs/IMC*, No. 2002/26, 2003 WL 23198817, at *2 (D.V.I. July 7, 2003) ("The responding party may not simply refer to a mass of records . . . to rely on Fed. R. Civ. P. 33(d)[. T]he responding party must specifically identify which documents contain the requested information in its answer to the interrogatory . . . .") (quoting *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 564 (D. Kan. 1997); citing *Rainbow Pioneer v. Hawaii– Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983); *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980) (additional citation omitted)); *see also In re G-I Holdings Inc.*, 218 F.R.D. 428, 438 (D.N.J. 2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information.") (citing *R.W. Thomas Constr. Mgmt. Co., Inc. v. Corrugated Servs., Inc.*, 1995 WL 592539 at *1 (E.D. Pa. 1995)).

Accordingly, within 30 days, Defendants shall provide Plaintiff with amended responses identifying the Bates numbers of all documents responsive to Interrogatories Numbers 5 through 7, 10 through 12, 14, 16 and 17.[4] *See Astellas Pharma Inc. v. Actavis Elizabeth LLC*, No. 16–

---

[4] To many of these same interrogatories, Defendants also objected that they had been "asked and answered in 2023" (while simultaneously referring Plaintiff only generally to "responsive" documents). (Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at Nos. 6-7, 10-12, 14, 16). However, "'[a]sked and answered' generally is not a valid objection to interrogatories." *See Warren v. Scudder*, No. 2:22-cv-00351-JPH-MG, 2023 WL

905–JFB–CJB, 2018 WL 2214656, at *2 (D. Del. May 3, 2018) (ordering party to identify documents responsive to interrogatories by Bates numbers); *Beye v. Horizon Blue Cross Blue Shield*, Nos. 06–5337(FSH) & 06–6219(FSH), 2007 WL 7403210, at *2 (D.N.J. Oct. 30, 2007) (same).

### B.    Interrogatory No. 4

In Interrogatory Number 4, Plaintiff asked Defendants to state, *inter alia*, their[5] current employer, job title, and start and end dates of any employment with FPR.  (Pl.'s First Set of Interrogatories, ECF No. 178-2, at No. 4).  In their most recently amended formal answer, they responded:

> Julian Boryszewski and Nick Canci are coowners of FPR. Matthew Boryszewski is at an unknown employer. Matthew Cruz is no longer employed with FPR and is working at Penske in Reading, PA. Jessica Boryszewski was never an employee of CT Install and is the office manager of FPR and not a shareholder in her own right. Carrie Sullivan remains employed at FPR in sales. Tim Bodnar is at Calco Inc.

(Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at No. 4).

In subsequent correspondence between counsel, Defendants proposed the following amendment:

---

2600665, at *2 (S.D. Ind. Mar. 22, 2023) ("[I]t is improper to answer an interrogatory by incorporating by reference deposition testimony or a response to another interrogatory.") (quoting *Gevas v. Wexford Health Sources*, No. 20 C 50146, 2021 WL 5795308 (N.D. Ill. Dec. 7, 2021)).  Moreover, even if these objections were valid, they do "not refer [Plaintiff] to any response to a discovery request where [it] could find the information [it] requested. Accordingly, [Defendants'] objections are overruled for lack of specificity." *See Washington v. McDonnell*, No. 17-5528-MCS (KS), 2021 WL 3810999, at *2 (C.D. Cal. Mar. 18, 2021).

[5]  Specifically, Plaintiff asked Defendants to provide this information for any individual they identified in response to Interrogatory Number 3 as having knowledge of this matter.  (Pl.'s First Set of Interrogatories, ECF No. 178-2, at No. 3).  In response thereto, they identified, *inter alia*, Julian Boryszewski and Canci by name and "the Defendants" generally.  (Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at No. 3).

> Julian Boryszewski and Nick Canci are co-owners of FPR.
> Matthew Boryszewski's termination date is 2/3/25, and he is at an
> unknown employer. Matthew Cruz is no longer employed with
> FPR and is working at Penske in Reading, PA. Jessica
> Boryszewski was never an employee of CT Install and is the office
> manager of FPR and not a shareholder in her own right. Carrie
> Sullivan remains employed at FPR in sales. Tim Bodnar'[s]
> termination date is January 14, 2024 and he is believed to be
> employed at Calco Inc. in Lancaster, Pa. Alexx Biscuit is dead.
> None of the named individuals were independent contractors.

(Email Exch., ECF No. 178-4, at 15, 21).

Plaintiff observes, however, that even this answer stated only a "belief" as to Bodnar's employment and omits Defendants' FPR start dates, several job titles and end dates, any information about Stanley, and Matthew Boryszewski's current employer or position. (Mot. for Sanctions, ECF No. 178, at 13). Defendants respond that they have made "reasonable efforts" to obtain the requested information but several of them are no longer affiliated with FPR. (Resp., ECF No. 180, at 6). They maintain that "[t]hese circumstances are beyond [their] control . . . ." (*Id.*).

Defendants' answer to this interrogatory is incomplete. Whether or not each individual Defendant remains affiliated with FPR, they all remain parties to this action and represented by defense counsel. Therefore, any failure to provide the requested information is tantamount to a refusal to answer an indisputably proper discovery request and, going forward, will be treated accordingly. Moreover, even for those Defendants for whom information was provided, much of it is missing, as detailed by Plaintiff in its brief. Finally, despite Alexx Biscuit's passing, start and end dates of any employment with FPR can be provided, particularly since FPR would have such information.

For these reasons, within 30 days, Defendants shall provide Plaintiff with an amended response definitively setting forth all information for each of them, as applicable, requested in Interrogatory Number 4.

### C.    Interrogatory No. 15

In Interrogatory Number 15, Plaintiff asked Defendants to identify the author or developer of the documents produced in response to Requests for Production (RFPs) Numbers 10 and 11.  (Pl.'s First Set of Interrogatories, ECF No. 178-2, at No. 15).  In these RFPs, Plaintiff requested "all scripts or prompts or rebuttals" utilized by FPR to set customer appointments during a designated period and all documents exchanged with or referring to customer Randy Kolvek or regarding a contract attached to Plaintiff's complaint.  (Mot. for Sanctions, ECF No. 178, at 14).  Defendants responded that "Julian Boryszewski has final editing all materials provided to FPR employees."  (Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at No. 15).  In subsequent correspondence between counsel, Defendants' attorney explained:

> As far as interrogatory 15 is concerned, there is a misapprehension of the sales materials.  As Matt Cruz testified, and as has been explained in discovery and other depositions, the sales materials (scripts, etc.,) you seek simply do not exist in any meaningful or permanent way, except as provided in manufacturer's material (e.g. Bath Planet, etc.).  Instead, the materials for training use are typically third-party videos (e.g. youtube) or other materials not generated by any individual at FPR.

(Email Exch., ECF No. 178-4, at 7).

Plaintiff characterizes this explanation as "indicat[ing] that materials responsive to RFP Nos. 10-11 were either lost or never produced," (Mot. for Sanctions, ECF No. 178, at 14), but Defendants counter that they simply do not exist.  (Resp., ECF No. 180, at 6-7).  Although impossible to know with certainty without a better understanding of the underlying documents

produced, this Court sees nothing in Defendants' responses or correspondence with Plaintiff

suggesting that any materials responsive to these discovery requests have been mislaid or

withheld.  Instead, they explained that Julian Boryszewski was the final editor of the documents

produced in response to these RFPs and that any additional materials provided were either from

the manufacturer or other third-parties.  Without more from Plaintiff, the Court cannot determine

that this response is inadequate.  As such, any relief as to Interrogatory Number 15 is denied.

*See Farran v. Johnson Equip., Inc.*, No. 93-6148, 1995 WL 549005, at *1 (E.D. Pa. Sept. 12,

1995) ("Where the answer [to a discovery request] states that no record exists, the court cannot

compel the impossible."); *see also E.E.O.C. v. Aldi, Inc.*, No. 06-01210, 2008 WL 2329603, at

*2 (W.D. Pa. June 3, 2008) (accepting party's representation that she did "not possess any

responsive documents" and finding that "there [was] nothing to compel") (internal quotations

omitted).

### D.     Interrogatory No. 17

In Interrogatory Number 17, Plaintiff asked Defendants to identify and describe all

computers and devices used during a designated period by Canci, Cruz, Blumburg, and Julian,

Jessica, and Matthew Boryszewski, including various specified information about them such as

their type, brand, model, reformatting status and date (if any), location, and software.  (Pl.'s First

Set of Interrogatories, ECF No. 178-2, at No. 17).  In response, Defendants directed Plaintiff to

its document production and promised to "supply an affidavit of Brandon Harter, Esquire, listing

all the devices."  (Defs.' Third Am. Resps. to Pl.'s Sec. Set of Interrogatories, ECF No. 178-3, at

No. 17).  In follow-up correspondence about their response and associated document production,

Defendants indicated that no devices other than FPR workstations were available but that they

would continue searching tablets and supply any data located (including copies of hard drives

and memory backups); that the FPR workstations of Cruz, Bodnar and Matthew Boryszewski had been repurposed and were thus also unavailable; and that the latter's cell phone data was "currently unavailable," apparently because "he is no longer with FPR." (Email Exch., ECF No. 178-4, at 18-19, 35-36).

In its motion,[6] Plaintiff questions why the repurposed workstations were not preserved (especially as to Matthew Boryszewski's, given that the Court had already compelled production of this discovery) and observes that Defendants have not indicated when their belated search of tablets will conclude. (Mot. for Sanctions, ECF No. 178, at 17). Furthermore, it explains that the URL Defendants provided to an unspecified "additional production, including Nick Canci's phone back up," required a verification code sent to defense counsel, and, as such, Plaintiff was unable to access the production. (*Id.* at 19-21 (citations omitted)). It adds that the promised list of Defendants' devices has not been provided. (*Id.* at 22).

Defendants respond that they have since produced all ESI and data in their possession, including: the email, computer and cell phone of FPR, Canci, and Julian and Jessica Boryszewski; Sullivan's email and computer; and Matthew Boryszewski's email. (Resp., ECF No. 180, at 3). They maintain that the remaining Defendants lacked designated "work computers" and that any work-related email or text messages would have been sent to FPR's principals. (*Id.*). Defendants deny destroying any computers, including Matthew Boryszewski's. (*Id.* at 3 nn. 2-3). They insist that they have responded to Plaintiff's interrogatories as much as possible within the limits of usual business operations and suggest that Plaintiff should depose

---

[6] Although the Court sets forth in this subsection all Plaintiff's contentions relating to Defendants' answer to Interrogatory Number 17, it notes that several of them do not directly relate to obtaining discoverable documents or information but rather highlight Defendants' discovery missteps and thus pertain more to the appropriate sanction, if any, to be entered. As such, the Court addresses them further in Section III.F below.

FPR's principals rather than pursue sanctions based on "discovery requests for documents or answers which never existed in the form stated . . . ." (*Id.* at 4).

In reply, Plaintiff reiterates that the promised additional "hard drive copies," "cell phone backups" and tablets have not been produced (including for Matthew Boryszewski, even though he allegedly accessed its database over 200 times before departing from Plaintiff) and point out that no personal computers were produced either, despite several Defendants allegedly not having "work computers." (Reply, ECF No. 181, at 2, 4-5, 7-8). Plaintiff emphasizes that defense counsel continues to make representations on behalf of Defendants with whom he apparently has no contact (i.e., Matthew Boryszewski, Bodnar and Cruz). (*Id.* at 2-3). It further notes that Defendants failed to produce responsive email and texts from some based on the misplaced assumption that they would necessarily be provided through other Defendants' discovery. (*Id.* at 5).

This Court agrees with Plaintiff that emails and messages exchanged between the individual Defendants are not shielded from discovery simply because they were not sent from designated "work" devices, which, by Defendants' own admission, many of them lacked. Nor does this Court buy Defendants' argument that all potentially relevant emails would necessarily have been sent to or from a Defendant whose email has been produced. Accordingly, *all* Defendants shall produce *all* electronic messages (in whatever format) exchanged between or among them during the relevant period, even if the message was sent or received on a "personal" device. (*See also* Request for Prod. (RFP) No. 6).

The Court also rejects Defendants' suggestion that departure from FPR ends one's discovery duties in this matter. Specifically, they shall produce the cell phone data backup and any other withheld ESI of Matthew Boryszewski (and similar materials for any other Defendant

14

who is not currently affiliated with FPR). Failure to do so absent a reasonable explanation will be viewed as willful noncompliance.

Defendants shall also produce (as previously promised) all tablets, including hard drives and memory backups, as well as the affidavit from Attorney Harter (or a similarly knowledgeable individual) listing their devices. The affidavit shall specify where each can be located in Defendants' production and, for any devices not produced, the reason, relevant dates, and what efforts Defendants have undertaken to locate the device. Moreover, they will sort out the issue with the verification code for the "additional production" or find an alternative delivery method that otherwise provides Plaintiff unfettered access to it.[7]

### E.    Remaining Missing Discovery

Lastly, Plaintiff asserts that in withholding or destroying much of their ESI, Defendants have failed to produce the following materials and information: an accounting of FPR's customers and associated metadata; its iPad sales presentation and bath design software; and its Lead Perfect and Leap software or account. (Mot. for Sanctions, ECF No. 178, at 23 (citing RFP Nos. 16, 20-23; Interrogatory No. 5)). In correspondence between the parties, Defendants represented simultaneously that "[a]ll information has been provided," but "[i]f" more existed, "such as through ipad-like devices," it would also be provided. (Email Exch., ECF No. 178-4, at 24, 37). To this end, this Court has ordered Defendants to wrap up their search for and of tablets. Some of these materials may also be included in other compelled discovery. And others simply may not be available. (*See* Resp., ECF No. 180, at 6-7 (explaining that similar requested discovery was unavailable)); *see also Farran*, 1995 WL 549005, at *1; *see also E.E.O.C.*, 2008 WL 2329603, at *2.

---

[7] Defendants will carry out all the responsibilities discussed herein within 30 days.

15

Thus, the Court has already addressed these discovery requests to the extent possible and orders no additional relief as to them.

### G.      Sanctions

#### 1.      F.R.C.P. 26(g)(3)

##### a.      The Parties' Positions

Plaintiff argues that sanctions are warranted under Rule 26(g)(3) because Defendants have repeatedly certified that all discovery in their possession has been turned over only to subsequently acknowledge that large quantities of it remain unproduced.  (Mot. for Sanctions, ECF No. 178, at 30).  They cite as purported examples Defendants' "asked and answered" objections to interrogatories, failure to identify which documents correspond to which interrogatories, past refusals to come up with FPR job descriptions for themselves, delay in furnishing the promised inventory of electronic devices, and representations that all hard drives and cell phones had been produced while failing to produce the former and excluding four of the six phones through unilateral imposition of search terms.  (*Id.* at 31, 33).  Setting forth this Court's discussion of the parties' obligations under the rule from its ruling on one of Plaintiff's prior motions to compel and for sanctions in this matter, (Order, ECF No. 137, at 3-4), as well as similar background law from other cases within this circuit, Plaintiff contends that Defendants' improper certifications are "strategic discovery tactics" that have necessitated repeated deficiency notices, meet-and-confers and reviews of piecemeal and incomplete productions. (Mot. for Sanctions, ECF No. 178, at 31-33 (citing *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 105 (D.N.J. 2006); *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa. 1996))).  Plaintiff requests whatever sanctions, including attorneys' fees incurred in overcoming Defendants'

improper certifications, that the Court finds allowable under Rule 26(g)(3) but not otherwise so under Rule 37(b)(2)(C).  (*Id.* at 33).

Defendants do not specifically address Rule 26(g)(3) in their response.  (*See generally* Resp., ECF No. 180).  Plaintiff highlights this fact in its reply and again accuses them of repeatedly certifying incomplete or nonresponsive answers to interrogatories while claiming that all discovery in their possession has been produced when in fact it has been withheld or spoliated.  (Reply, ECF No. 181, at 17).  It observes that Defendants have not explained what reasonable inquiry they performed prior to certifying in 2024, 2025 and this year that all discovery had been provided and maintains that sanctions are required if responses are signed without such an inquiry.  (*Id.*).  Plaintiff adds that Defendants lacked a substantial justification for not disclosing their use of unilateral search terms or for resubmitting nonresponsive interrogatory answers, both of which required Plaintiff to unnecessarily incur additional fees and costs.  (*Id.* (citing *R & R Sails, Inc. v. Ins. Co.*, 251 F.R.D. 520, 525 (S.D. Cal. 2008))).

### b.    Analysis

This Court declines to issue sanctions under Rule 26(g)(3).  Initially, as Plaintiff notes, Rule 37(b)(2)(C) also permits the imposition of sanctions, and as explained in the next subsection those alone suffice to address Defendants' discovery noncompliance.  (*See* § III.G.2.b).  Additionally, this Court rejects the notion that every subsequently overruled objection or discovery misstep warrants sanctions under the rule.  *See Bracey*, 2013 WL 2253576, at *2 (magistrate judge did not abuse her discretion by refusing to impose sanctions under Rule 26(g)(3) where, *inter alia*, "the discrepancy at issue was not part of a pattern of obstruction").  Although the Court overrules Defendants' "asked and answered" objections, they were accurate insofar as the interrogatories at issue had been posed already and Defendants has responded to

17

them.  Moreover, not every court to consider such an objection to interrogatories has found it categorically improper.  *See, e.g., Hill v. City of Harvey*, No. 17 C 4699, 2019 WL 6173415, at *2 (N.D. Ill. Nov. 20, 2019 (citing *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 640 (D. Kan. 1999))).  Furthermore, this Court has located no case within this circuit (and Plaintiff has provided none, from any jurisdiction) in which sanctions were awarded under Rule 26(g)(3) for failure to specify responsive documents pursuant to Rule 33(d).  *But see, e.g., Metz Culinary Mgmt., Inc. v. OAS, LLC*, No. 3:21-CV-01023, 2022 WL 17978793, at *6 (M.D. Pa. Dec. 28, 2022) (ordering party answering interrogatory by pointing to its document production pursuant to Rule 33(d) to specify the responsive documents, but not imposing sanctions under Rule 26(g)(3)); *Deibler v. SanMedica Int'l, LLC*, No. 19-20155(NLH/MJS), 2021 WL 6198062, at *9 (D.N.J. Dec. 30, 2021) (same).  As for Defendants' assertion that they were not required to come up with job descriptions for themselves, it was an argument made in a brief, not a Rule 26 disclosure or "discovery request, response, or objection . . . ."  (Defs.' Resp. to Pl.'s First Mot. to Compel, ECF No. 66, at 11); F.R.C.P. 26(g)(1).  As such, it cannot expose Defendants to sanctions under Rule 26(g).  *See* F.R.C.P. 26(g)(1) (limiting the rule's sway to these documents).

Accordingly, this Court is left to consider whether Defendants' failure to produce a promised inventory of electronic devices and unilateral use of search terms resulting in the withholding of some devices warrants sanctions under Rule 26(g)(3).  Such relief is not warranted.  Given the obvious lack of clarity regarding the universe of existing devices, the Court will require Defendants to make good on their promise to produce an affidavit listing them all, but it declines to issue associated sanctions because normally "a party should not be required to create completely new documents" in discovery.  *IQVIA, Inc. v. Veeva Sys., Inc.*, No. 2:17-CV-00177-CCC-MF, 2019 WL 6044938, at *6 (D.N.J. Nov. 14, 2019).  Additionally, as noted in

18

a prior order, Defendants employed search terms to rein in the amount of ESI only after Plaintiff declined their good faith offer to utilize a third-party vendor to facilitate such discovery.  (Order, ECF No. 166, at 2).  Although misguided in that choice, Defendants do not appear to have intended to deceive Plaintiff.  Therefore, this Court does not issue sanctions under Rule 26(g)(3). *Cf. Prominent GmbH v. Prominent Sys., Inc.*, No. 16-1609, 2019 WL 3972819, at *2 (W.D. Pa. Aug. 22, 2019) (noting "[t]he Court does not approve of inaccurate responses to discovery[,]" but refusing to issue sanctions because, *inter alia*, "there [was] no evidence that [the defendant] intended to provide false information").

### 2.     F.R.C.P. 37(b)(2)

#### a.     The Parties' Positions

Plaintiff requests sanctions under Rule 37(b)(2) because Defendants have yet to produce discovery originally due in June 2024, including responses to more than half of its interrogatories, an unknown amount of ESI, and discoverable materials contained on computers allegedly destroyed after this Court compelled production thereof for a second time.  (Mot. for Sanctions, ECF No. 178, at 24).  Plaintiff highlights that it has conferred with Defendants for years about their discovery obligations, but with only minimal results.  (*Id.* at 25-26).  It insists that Defendants' withholding and destruction of clearly relevant discoverable information is baseless and cites as an example of their malfeasance the spoliation of Matthew Boryszewski's FPR workstation and failure to turn over any phone, account or other device from him (or several other Defendants).  (*Id.* at 26-27 (citing *Finkel v. WeVeel LLC*, 591 B.R. 217, 233-34 (Bankr. E.D. Pa. 2018))).  Plaintiff also casts doubt as to whether Defendants have preserved all ESI throughout the relevant period.  (*Id.* at 27).

Setting forth case law construing Rule 37(b)(2), Plaintiff seeks a comprehensive award of all discovery-related expenses going back to May 2024, as well as the following adverse inferences:

(i)      Matthew Boryszewski, with the assistance of Julian Boryszewski, Nicholas Canci, and Jessica Boryszewski, accessed Install America's Lead Perfection database to retrieve proprietary information regarding Plaintiff's trade secrets without authorization, utilized internet connected computers to do so, and did so during and following his employment at Install America.

(ii)     Julian Boryszewski, Nicholas Canci, and Jessica Boryszewski conspired with Matthew Boryszewski to solicit Install America's customers and employees, and use Install America's misappropriated trade secrets to start a competing business, i.e., Focal Point Remodeling, Inc.

(iii)    Julian Boryszewski, Nicholas Canci, Matthew Boryszewski, and Jessica Boryszewski conspired to solicit Carrie Sullivan, Cayce Bankert, Timothy Bodnar, Ginger Stanley, Matthew Cruz, David Snively, Alexx Biscuit, and Thomas Clattenburg for employment with FPR.

(iv)     Julian Boryszewski, Nicholas Canci, Matthew Boryszewski, and Jessica Boryszewski utilized Plaintiff's customer lists and other proprietary information to launch FPR and generate its 2020-2024 earnings.

(iv)     FPR is a competitor of Install America.

(v)      Plaintiff has suffered economic harm from Defendants' actions and FPR's competition with Install America.

(Mot. for Sanctions, ECF No. 178, at 28-30 (citing *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249 (3d Cir. 2014))).

20

Defendants respond that they have substantially complied with their discovery duties by producing all responsive materials within their possession, custody or control and that they have made "reasonable efforts" to obtain information from those no longer affiliated with FPR. (Resp., ECF No. 180, at 4-6).  They suggest that Plaintiff should depose Canci, the Boryszewskis and/or a corporate designee instead of seeking sanctions (particularly in light of the conspiracy claim) and submit that the lack of responsive documents may reflect the weakness of Plaintiff's claims rather than Defendants' own discovery noncompliance.  (*Id.* at 6-7, 9-12 (citing *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128 (3d Cir. 2018); *Stony Battery RD Property Owner LLC v. QVC, Inc.*, No. 5:23-cv-00518-JMG, 2025 WL 2825598 (E.D. Pa. Oct. 3, 2025))).  They continue that the purported weakness of Plaintiff's claims also undermines any right to severe sanctions, as does the supposed lack of clarity in its discovery requests.  (*Id.* at 9-10 (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 865 (3d Cir. 1984); *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 81 (W.D. Va. 2021); *In re Neurontin Antitrust Litig.*, MDL No. 1479, 2009 WL 2751029 (D.N.J. Aug. 28, 2009))).  Furthermore, Defendants claim that Plaintiff's requested sanctions of adverse inferences, preclusion of evidence and attorneys' fees for all discovery efforts over the last two years are disproportionate and unjust given FPR's small size and Defendants' substantial production made to date, costs incurred through attempted compliance, lack of bad faith, consistent communication with the opposition and Plaintiff's own aggressive pursuit of discovery.  (*Id.* at 12-13).

In reply, Plaintiff specifies that it seeks an adverse inference that all discovery not produced within 14 days would have been "unfavorable" to Defendants and preclusion of evidence from them concerning any claim elements for which they have spoliated discoverable materials.  (Resp., ECF No. 181, at 10).  It maintains that such sanctions are just because they

21

relate directly to the unproduced and spoliated materials and do not establish a right to recovery on any claim because issues of contractual enforceability and damages would remain. (*Id.* (citing *MOSAID Techs., Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 339-40 (D.N.J. 2004))). Observing that a party must preserve relevant information once litigation becomes foreseeable, Plaintiff accuses Defendants of "sandbagg[ing]" it by failing to preserve, collect and disclose information that in some instances it also limited through unilateral search terms and lack of communication among themselves. (*Id.* at 13 (citing *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 480 (D. Del. 2012))). Disputing Defendants' assertions of discovery compliance, Plaintiff highlights their belated acknowledgment that they have not preserved all devices, emails and texts initially requested nearly two years ago and points out that their failure to correlate responsive documents to individual interrogatories or inventory their devices has effectively spoliated those materials unless they were now to undertake a forensic effort to identify them retroactively. (*Id.* at 13-14 (citing *United States v. Dynamic Visions, Inc.*, 307 F.R.D. 299, 302 (D.D.C. 2015))). For these reasons, they insist that the requested sanctions are appropriate. (*Id.* at 14-15 (citing *McLaughlin*, 756 F.3d at 249)).

Taking on Defendants' argument that they have already incurred substantial discovery expenses, Plaintiff insists that the costs required of Defendants to comply with the Court's discovery orders are a result of their own deceptive tactics and in any event not a defense to sanctions where they have spoliated, withheld and failed to preserve essential discovery such as an inventory of devices, communications between themselves, and customer data used to launch and sustain a competing business. (*Id.* at 10-12 (citing *DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1343-44 (Fed. Cir. 1998); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020); *Klipsch Grp., Inc., v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 631-34 (2d Cir. 2018);

*Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 387-88 (D.N.J. 2006))).  Plaintiff further

argues that whether it has yet taken depositions is likewise immaterial to Defendants' violations

of this Court's orders and the propriety of sanctions and that, if anything, production of written

discovery must precede depositions so that they are effective.  (*Id.* at 15-16 (citing *Societe*

*Internationale Pour Participations v. Rogers*, 357 U.S. 197, 208 (1958); *Halas v. Consumer*

*Servs.*, 16 F.3d 161, 164 (7th Cir. 1994); *Nutramax Labs., Inc. v. Twin Labs., Inc.*, 183 F.R.D.

458, 461 (D. Md. 1998))).  It distinguishes Plaintiff's cited cases, *In re Neurontin Antitrust Litig.*,

2009 WL 2751029, and *Power Home Solar, LLC*, 339 F.R.D. 64, on the grounds that the former

involved ambiguous (as opposed to withheld) discovery responses and that the latter merely

stands for the unobjectionable tenet that depositions are favored in discovery.  (*Id.* at 21-22).

Additionally, it distinguishes *Poulis*, 747 F.2d 863, also cited by Defendants, as speaking only to

the appropriateness of "extreme sanctions" like dismissal or default, not the lesser ones requested

by Plaintiff here.  (*Id.* at 20-21 (citing *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,

2022 U.S. Dist. LEXIS 246263 (D.N.J. Apr. 19, 2022))).

### b.    Analysis

Even if the amount of damages would remain to be determined, Plaintiff's requested

adverse inferences establishing Defendants' conspiracy to misappropriate Plaintiff's trade

secrets, solicit its customers and employees, and set up a competing business would undoubtedly

result in them being found liable on many, if not most, of Plaintiff's claims, particularly if they

were also precluded from introducing evidence on these and related issues.  (*See* Am. Compl.,

ECF No. 95, at ¶¶ 322-476 ("Causes of Action")).  Under such circumstances, *Poulis* provides

the applicable framework for considering whether such sanctions would be appropriate.  747

F.2d at 868 (listing factors for court to consider when dismissing an action or entering a default

23

judgment as a sanction); *see also* 7 James Wm. Moore et al., Moore's Federal Practice § 37.51[2] (Matthew Bender 3d ed.) ("If deeming certain facts established is tantamount to disposing of claims, appellate courts require the same justification that is required for a dismissal or default sanction.").

Pursuant to *Poulis*, the Court must consider six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of the sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.[8]

*Id.* at 868 (emphasis omitted). There is no "magic formula" or "mechanical calculation" for balancing the *Poulis* factors. *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008). "No single *Poulis* factor is dispositive," *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003), and not all the factors need to be satisfied to enter dispositive relief. *See Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). Deciding whether to do so requires a balancing of the factors articulated in *Poulis*. *Huertas v. City of Phila.*, No. 02-7955, 2005 WL 226149, at *2 (E.D. Pa. Jan. 26, 2005).

First, Defendants bear significant personal responsibility for the failure to turn over

---

[8] Notably, as Plaintiff suggests, Defendants' purportedly small capitalization and substantial costs incurred in attempting to comply with their discovery obligations and Plaintiff's own purportedly dogged pursuit of the discovery to which it is entitled are irrelevant to determining whether Plaintiff's requested sanctions are appropriate. Similarly, Plaintiff's decision to defer depositions until Defendants have produced all available discovery, consistent with industry practice, does not affect whether or what sanctions are appropriate. *Nutramax Labs., Inc.*, 183 F.R.D. at 461 ("Recognizing the importance of documents in conducting effective deposition discovery, counsel frequently postpone, as was done in this case, deposition discovery until document production has taken place pursuant to Fed. R. Civ. P. 34.") (citation omitted).

discoverable information.  For instance, Matthew Boryszewski, Bodnar and Cruz have failed to maintain contact with their counsel, obviously inhibiting their participation in discovery.  (Resp., ECF No. 180, at 6); *see Washington v. Credit One Bank*, No. 16-309, 2017 WL 3530859, at *1 (W.D. Pa. July 28, 2017) ("The *Poulis* analysis begins by delineating Plaintiff's personal responsibility for failing to respond to her own counsel's attempts to contact her.")  Additionally, FPR, owned by Canci and Julian Boryszewsi, "repurposed" multiple company workstations after being ordered to produce "all" discovery.  Absent any indication that counsel directed them to take this action or failed to advise them of their duty to preserve and turn over their devices, Defendants themselves shoulder the primary blame for this potential spoliation.

Second, Defendants' noncompliance has prejudiced Plaintiff insofar as it has delayed the adjudication of this matter and caused Plaintiff to incur expenses while chasing after Defendants to fulfill their discovery obligations.  *See Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984) (stating that "excessive and possibly irremediable burdens or costs" prejudices an adversary); *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 32 (E.D. Pa. 2024) ("Prejudice can also come from 'deprivation of information due to lack of cooperation with discovery' as well as the 'costs of obtaining court orders to enforce discovery obligations.'") (quoting *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874-75 (3d Cir. 1994)).  Nonetheless, it is not clear to this Court that we have yet reached the point where Defendants' actions have irreparably affected the merits of the case and cannot be remedied by mandated compliance moving forward and an award of expenses to Plaintiff.

Third, in its motion Plaintiff recounts extensive dilatoriness on behalf of Defendants, including a failure to produce all discovery originally requested in 2022, even after it was repeatedly compelled in the ensuing years, and, perhaps most troublingly, alleged destruction of

25

discoverable ESI *following* the Court's order to produce it. (*See, e.g.,* Mot. for Sanctions, ECF No. 178, at 2); *see also Painadath*, 348 F.R.D. at 32 ("A history of dilatoriness is shown by 'extensive or repeated delay or delinquency,' including 'consistent non-response to interrogatories, or consistent tardiness in complying with court orders.'") (quoting *Adams*, 29 F.3d at 874-75). Defendants respond that their production has been "substantial" and that certain requested materials do not exist, (Resp., ECF No. 180, at 7-8), but, be that as it may, there is no question that they have thwarted Plaintiff's reasonable efforts by, *inter alia*, failing to produce all devices (or even an inventory thereof), "repurposing" some of them, and otherwise limiting access to ESI contained on them through the unilateral use of restrictive search terms. Thus, this factor also weighs in favor of a substantial sanction. *See Painadath*, 348 F.R.D. at 32 (party's "dilatory conduct permeated discovery" where he, *inter alia*, "refused to identify his devices and attempted to impose conditions on the inspection" and "deleted data from [his] phone"); *see also Washington*, 2017 WL 3530859, at *1 (party's "unwillingness to communicate with her own counsel demonstrates a sufficient history of dilatoriness" for severe sanctions).

Fourth, Defendants' conduct has been willful, to a degree. As noted throughout this memorandum, many of Defendants' objections to Plaintiff's discovery requests have been meritless, and they still owe Plaintiff substantial discovery despite this Court's repeated directives to furnish it with "all" discoverable materials. *See Roman v. City of Reading*, 121 F. App'x 955, 960 (3d Cir. 2005) ("[a]bsence of reasonable excuses" or "repeated failures to observe court imposed deadlines" may demonstrate willfulness). Nonetheless, Defendants correctly note that they have produced a significant amount of materials and that their counsel has consistently communicated with his counterpart about the status of discovery (albeit to often take unsatisfactory positions regarding further production). (Resp., ECF No. 180, at 4-5, 13).

26

This Court has also explicitly observed that Defendants have made prior good faith efforts to produce ESI, such as the proposed joint engagement of a third-party vendor.  (Order, ECF No. 166, at 2).  Accordingly, this factor also weighs in favor of a substantial sanction, although perhaps not so substantial as requested by Plaintiff.

Fifth, and most importantly in the instant matter, lesser sanctions than what would amount to dispositive relief may yet engender Defendants' substantial compliance with their discovery obligations while minimizing any prejudice to Plaintiff.  *See In re Feldman*, 608 B.R. 426, 440 (Bankr. E.D. Pa. 2019) ("default judgment is an extreme sanction which should be a 'last, not first, resort'") (quoting *Poulis*, 747 F.2d at 869); *see also Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019) ("Without a doubt, cases should be decided on the merits barring substantial circumstances in support of the contrary outcome.").  In this memorandum, the Court has now specifically shot down most of the remaining bases on which Defendants purported to withhold or refuse to identify responsive information and materials, and it has further ordered them to produce an inventory of all discoverable devices, including why any are unavailable and when they became so.  (*See, supra*, § III.A.-B., D).  Following Defendants' anticipated compliance, Plaintiff will have a clearer picture regarding any spoliation or continued withholding and, as warranted, can bring such issues to the Court's attention via a request for clearly delineated adverse inferences each narrowly tailored to address the precise harm to Plaintiff's case caused by the specific act of destruction or withholding by Defendants. *See Ace Am. Ins. Co. v. First Call Env't, LLC*, No. 5:21-cv-02331-JMG, 2023 WL 137456, at *6 (E.D. Pa. Jan. 9, 2023) ("[T]he Court finds an adverse inference is an appropriate sanction because it is narrowly tailored to Defendant's non-production of the . . . Documents and directly addresses any resulting prejudice to Plaintiffs."); *see also Yoho v. Bank of N.Y. Mellon Corp.*,

27

No. 2:17-cv-917-NR, 2020 WL 7336579, at *10 (W.D. Pa. Dec. 14, 2020) ("[W]hile an adverse inference can be a powerful sanction, that inference must be tailored to what the evidence would have likely demonstrated.").

Sixth, and lastly, Plaintiff's right to sanctions is not undercut by any lack of merit in its claims. Although Defendants suggest in their response that their nonproduction of requested information might be attributable to an absence of evidence supporting Plaintiff's claims, (Resp., ECF No. 180, at 10), elsewhere they have acknowledged that their liability hinges only on whether they signed their employment contracts. (Resp. to Mot. re: Sufficiency of RFAs, ECF No. 177, at 9). Even absent this acknowledgment, however, this Court has little trouble in finding Plaintiff's complaint sufficiently meritorious to allow for the imposition of an appropriate sanction. *See Painadath*, 348 F.R.D. at 33 ("meritorious" means only that "the allegations in the complaint would, if proven at trial, support recovery.").

Therefore, if this Court were to apply a mere "mechanical calculation," *Briscoe*, 538 F.3d at 263, tallying the factors that weigh in favor of imposing Plaintiff's sought-after adverse inferences against those that do not, it would no doubt be compelled to acquiesce to that request, effectively ending this case without an adjudication on the merits. But that is not the calculus. Given the strong preference in resolving cases based on their own strengths and weaknesses, *Ace Am. Ins. Co.*, 2023 WL 137456, at *6; *Yoho*, 2020 WL 7336579, at *10, and the availability of lesser relief as described above, this Court will forego greater sanctions, pending Defendants' final chance to produce "all" requested discovery as repeatedly ordered. The Court also declines as unnecessarily punitive Plaintiff's invitation to saddle Defendants with all its costs and expenses of conducting discovery dating back to May 2024, particularly because the Court has already entered and denied such relief on a motion-by-motion basis. (*See* Mot. for Sanctions,

28

ECF No. 178, at 30; *see also* Orders, ECF Nos. 115, 121, 137, 173).  Nonetheless, the Court awards Plaintiff reasonable expenses incurred in prosecuting the instant motion, given Defendants' lack of a substantial justification for their ongoing noncompliance with the Court's orders and the absence of any other factors rendering such an award "unjust."  FED. R. CIV. P. 37(b)(2)(C).  Thus, within 14 days, Plaintiff shall submit the necessary supporting documentation, and within 14 days after that Defendants may submit a response challenging the amount of the request.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion is granted in part and denied in part.  An appropriate order follows.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

29